[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 458 
The only question involved in the action is, whether the plaintiffs and original owners or the defendants, the purchasers from Jeffries, the fraudulent vendee of the plaintiffs, have the better title to the merchandise in controversy. That, as against Jeffries, the right of the plaintiffs to rescind the sale and reclaim the goods, by reason of the fraud of the latter, is perfect, is conceded, and was so held upon the trial. Such right continues as against any one acquiring title under Jeffries, unless under well recognized principles of law, and, under the circumstances of this case, Jeffries could transfer a better title than he had, or the plaintiffs, by their acts, are estopped from asserting title as against a purchaser from him.
But two questions of fact were submitted to the jury: 1. Whether the sale to Jeffries was for cash or upon credit; and, 2. If for cash, whether payment was waived and the goods delivered so as, but for the fraud, to vest the property in Jeffries.
The jury found, either that the sale was upon credit, or that the payment of the purchase-price, as a condition precedent to the delivery of the property to and the vesting of the title in Jeffries was waived, and that the delivery to him was absolute and unconditional; and the defendants had a verdict, under the instructions of the judge, that the equitable rule applied, that when one of two innocent parties must suffer loss by reason of the fraud or deceit of another, the loss shall fall upon him by whose act or omission the wrong-doer has been enabled to commit the fraud; and that the plaintiffs were in the position of a party who lets another *Page 460 
have property unconditionally, and thereby enables him to sell the same and receive the purchase-price from a third person; and that in such case the purchaser takes the title. In other words, the plaintiffs were held to be estopped from claiming the goods from the defendants in case the jury found that there had been an unconditional delivery by the plaintiffs to Jeffries, notwithstanding, as the judge at the circuit expressly declared, and as the evidence showed, the defendants purchased the goods from a broker of Jeffries in New York on the twenty-first of August, and paid for them the same day by transmitting their notes to Jeffries, at Boston, who at once negotiated them; and Jeffries obtained neither the property nor any order for its delivery, or documentary evidence of title or of his purchase, until the twenty-fourth of the same month, three days after the transaction was consummated as between Jeffries and the defendants. That is, it was held at the circuit that the subsequently acquired possession of Jeffries operated by relation to create an estoppel as of the twenty-first of August, in favor of the defendants and against the plaintiffs; and the jury were in terms instructed that the defendants were purchasers in good faith, for value, and acquired a title paramount to that of the plaintiffs, and were entitled to a verdict; and they had a verdict and judgment, upon this view of their rights.
That the defendants were purchasers in good faith, that is, without notice or knowledge of the fraud of Jeffries, or of the defects in his title, for a full consideration actually paid to Jeffries, is not disputed. Both plaintiffs and defendants are alike innocent of any dishonest or fraudulent intent, and one or the other must sufer loss by the frauds of one with whom they dealt in good faith, for legitimate purposes, and with honest intention. Both were alike the victims of the same fraudulent actor, and if one rather than the other of the parties has done any act enabling the fraud to be committed, and without which it could not have been perpetrated upon the other in the exercise of ordinary care and discretion, the loss should, within the rule before referred to, fall on that one of the parties *Page 461 
aiding and abetting the fraud, or enabling it to be committed. But good faith, and a parting of value by the one, will not alone determine who should have the loss, or fix the ownership of the property fraudulently purchased from the one and sold to the other. The general rule is that a purchaser of property takes only such title as his seller has, and is authorized to transfer; that he acquires precisely the interest which the seller owns, and no other or greater. Nemo plus juris ad alium transferrepotest quam ipse habet. (Broom's Leg. Max., 452.) The general rule of law is undoubted that no one can transfer a better title than he himself possesses. Nemo dat quod non habet. (Per WILLES, J., Whistler v. Forster, 14 C.B. [N.S.], 248.) To this rule there are, however, some exceptions, and unless the defendants are within the exceptions they must abide by the title of Jeffries.
One of the recognized exceptions applies to negotiable instruments only, and depends for its existence upon the law-merchant and the reasons of public policy upon which that branch of the law rests. To make this exception available, the negotiable paper must be actually transferred by indorsement in the usual form and for value. (Whistler v. Forster [supra];Muller v. Pondir, in this court, Dec. 23, 1873 [MSS. Op.];* Story on Prom. Notes, § 120 [note 1]; Calder v.Billington, 15 Maine, 398; Southard v. Porter, 43 N. II., 379.) Another exception is in the case of a transfer by indorsement and delivery of a bill of lading, which is the symbol of the property itself, to a bona fide purchaser for value, by a consignee to whom the consignor and original owner of the goods has indorsed and delivered it. This exception is founded on the nature of the instrument, and the necessities of commerce. The bill of lading, for the convenience of trade, has been allowed to have effect at variance with the general rule of law. But this operation of a bill of lading is confined to a case where the person who transfers the right is himself in possession of the bill of lading so as to *Page 462 
be in a situation to transfer the instrument itself, the symbol of the property transferred. (Jenkyns v. Usborne, 7 M. G., 678; Akerman v. Humphery, 1 C. P., 53.)
Bills of lading differ essentially from bills of exchange and other commercial negotiable instruments; and, even possession of a bill of lading, without the authority of the owner and vendor of the goods, or when obtained by fraud, will not authorize a transfer so as to defeat the title of the original owner, or affect his right to rescind the sale and stop the goods in transit. While possession of a bill of lading, or other document of like nature may be evidence of title, and in some circumstances and for some purposes equivalent to actual possession of the goods, it does not constitute title, nor of itself affect the operation of the general rule that property in chattels cannot be transferred except by one having the title or an authority from the true owner. (Gurney v. Behrend, 3 Ellis Black, 622; Dows v. Perrin, 16 N.Y., 325; see also Saltus
v. Everett, 20 Wend., 267; Brown v. Peabody, 3 Kern., 121.) Jeffries had no bill of lading from the plaintiffs, the vendors of the goods, or any document of like character transferable in the usual course of business, and the transfer and delivery of which to a purchaser for value would have operated as a symbolical delivery of the goods, and been the equivalent of an actual delivery, so as to terminate the right of the plaintiffs to rescind the sale and reclaim the goods.
Another exception to the general rule exists in the case of a sale in market overt; but as we have no markets overt, and there are no sales, public or private, known to our law, which relieve the buyer of merchandise from the rule of caveat emptor, as applied to the title, this exception need not be further considered.
The defendants can only resist the claim of the plaintiffs to the merchandise by establishing an equitable estoppel, founded upon the acts of the plaintiffs, and in the application of the rule applied by the judge at the circuit, by which, as between two persons equally innocent, a loss resulting from *Page 463 
the fraudulent acts of another shall rest upon him by whose act or omission the fraud has been made possible. This rule, general in its terms, only operates to protect those who, in dealing with others, exercise ordinary caution and prudence, and who deal in the ordinary way and in the usual course of business and upon the ordinary evidences of right and authority in those with whom they deal, and as against those who have voluntarily conferred upon others the usual evidences or indicia of ownership of property, or an apparent authority to deal with and dispose of it. In such case, for obvious reasons, the law raises an equitable estoppel, and, as against the real owner, declares that the apparent title and authority which exists by his act or omission shall quoad
persons acting and parting with value upon the faith of it, stand for and be regarded as the real title and authority. It is not every parting with the possession of chattels or the documentary evidence of title that will enable the possessor to make a good title to one who may purchase from him. So far as such a parting with the possession is necessary in the business of life, or authorized by the custom of trade, the owner of the goods will not be affected by a sale by the one having the custody and manual possession. (Dyer v. Pearson, 3 B. C., 38; Newsom
v. Thornton, 6 East., 17; Dayton v. Kynne, 3 B. A., 320;Ballard v. Burgett, 40 N.Y., 314.) But the owner must go farther, and do some act of a nature to mislead third persons as to the true position of the title. (Pickering v. Busk, 15 East., 38.)
Two things must concur to create an estoppel by which an owner may be deprived of his property, by the act of a third person, without his assent, under the rule now considered. 1. The owner must clothe the person assuming to dispose of the property with the apparent title to, or authority to dispose of it; and, 2. The person alleging the estoppel must have acted and parted with value upon the faith of such apparent ownership or authority, so that he will be the loser if the appearances to which he trusted are not real. In this respect it does not differ from other estoppels in pais. (Weaver *Page 464 
v. Barden, 49 N.Y., 286; McGoldrick v. Willets,
52 id., 612; City Bank v. R.W. O.R. Co., 44 id., 136; Saltus v.Everett, 20 Wend., 267; Wooster v. Sherwood, 25 N.Y., 278;Brower v. Peabody, 3 Kern., 121.)
In the case before us every element of an estoppel is wanting, and no case was made for the application of the rule by which, under some circumstances, one, rather than the other two innocent persons, is made to bear the loss occasioned by the fraud of a third person.
The defendants consummated their purchase from Jeffries, acting through his broker in New York, and paid for the merchandise by remitting, at his request, directly to Jeffries on the twenty-first of August, at which time Jeffries had neither the possession nor right of possession of the property, nor any documentory evidence of title or any indicia of ownership, or of dominion over the property of any kind. The plaintiffs had done nothing to induce the defendants to put faith in or give credit to the claim of Jeffries of the right, to sell the property. The defendants then parted with the consideration for the purchase of the seed, not upon the apparent ownership of Jeffries, but upon his assertion of right of which the plaintiffs had no knowledge, and for which they are not responsible. Neither did the defendants at any time do or forbear to do any act in reliance upon the apparent ownership of the property by Jeffries, or induced by any act or declaration of the plaintiffs. InKnights v. Wiffen (L.R. [5 Q.B.], 660), the plaintiff was induced to rest satisfied under the belief that he had acquired title to the property purchased, and so to alter his position, by abstaining from proceedings to recover back the money which he had paid to his vendor, by the declaration of the defendant that it was all right, and his promise that when the forwarding note should be received he would put the barley on the line. The defendants here at no time had any declaration or statement of the plaintiffs upon which to rely, and were not led to act or forbear to act by any documentory evidence of title in Jeffries emanating from them. There is a manifest equity in holding *Page 465 
the owner of property estopped from asserting title as against one who, for value actually paid, has purchased it from one having, by the voluntary act or negligence of the owner, the apparent title with right of disposal, but with this limitation there is no hardship in holding to the rule that the right of property in chattels cannot be transferred unless on the ground of authority or title. Public policy requires that purchasers of property should be vigilant and cautious, at least to the extent of seeing that their vendors have some and the usual evidence of title, and if they are content to rest upon their declarations they may not impose the loss, which is the result of their own incautiousness or credulity, on another. The payment for or parting with value for the goods by the purchaser from the fraudulent vendee lays at the foundation of the estoppel, for, if he has parted with nothing, he can lose nothing by the retaking of the goods by the original owner, and that payment must be occasioned by the acts or omissions of such owner. It is the payment that creates the estoppel, and if that is not made in reliance on the acts of the owner, the latter is not and cannot, in the nature of things, be estopped.
The order granting a new trial must be affirmed, and judgment absolute for the plaintiffs.
All concur.
Order affirmed, and judgment accordingly.
* Ante. p. 325.